**Calvin MILLER, et al.,**

v.

**Donald U. TOATLEY, M.D. and the United States.**

**No. 98–373.**

United States District Court, W.D. Louisiana, Lake Charles Division.

June 1, 2000.

Russell T. Tritico, Lake Charles, for Calvin K. Miller, Individually & as natural tutor obo Megan Lynette Miller, Katina Miller, Individually & as natural tutrix obo Megan Lynette Miller, plaintiffs.

James B. Doyle, Sr., Michele S. Caballero, Woodley Williams, et al., Tara B. Hawkins, Kean Miller, et al., Lake Charles, Allen J. Mitchell, II, Stockwell Sievert, et al., Lake Charles, Janice E Hebert, U.S. Atty.'s Office, Lafayette, for Donald U. Toatley, Bayou Comprehensive Health Foundation Ltd., United States of America, defendants.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court are two motions for summary judgment [docs. 13 & 18]. The first is by defendant the United States of America and the second is by defendant Dr. Donald U. Toatley. These motions are brought pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Since both motions essentially raise the same issue as to whether the United States is a proper party to this lawsuit, the court will address both motions in this ruling. For the following reasons, this court finds that the United States' motion for summary judgment should be GRANTED thereby dismissing the United States from this action. Accordingly, defendant Dr. Toatley's motion should be DENIED.

## I. FACTUAL BACKGROUND

During August of 1995, Dr. Donald U. Toatley, M.D. (hereinafter "Dr. Toatley") was employed by Bayou Comprehensive Health Foundation, Inc. (hereinafter "Bayou"). The terms of the employment were set out in an employment contract (hereinafter "Contract"). Basically, the Contract provided for Dr. Toatley to operate as a provider of medical services both to Bayou's patients and to other patients on behalf of Bayou.

Bayou receives federal funding under the Public Health Service Act for community health services (42 U.S.C. § 254c). Bayou has been covered by the act since October 15, 1993. Coverage under the act mandates that the exclusive remedy for injuries, including death, caused by employees acting within the course and scope of employment of a deemed community health center is the Federal Torts Claim Act, 28 U.S.C. § 1346(b).

Essentially, the United States through the Federal Torts Claim Act exposes itself to lawsuits, in place of a health center. Therefore, the health center need not purchase and maintain malpractice insurance for itself or its physicians.

Under Bayou's contract for employment with Dr. Toatley "cross coverage" is not just permitted, it is required. The pertinent section on page 4 of the Contract states:

2. The Provider will provide after hour care, hospital care, and emergency care for patients. This does *not* mean the physician will be on call twenty-four (24) hours per day. This coverage shall be provided through cooperative coverage agreements with other physicians and

emergency rooms commonly referred to as "cross coverage."

Cross coverage benefits the doctors by allowing them a break from being on call. It also benefits Bayou because after hour care is provided to its patients *and* its doctors are providing care to other patients through Bayou thereby bringing in revenue. Payment for care must be billed through Bayou as page 5 of the Contract makes clear:

> 5. It is specifically agreed and understood that *all funds or monies* generated, received, or collected as a result of or by inpatient care and outpatient care, shall belong to the Corporation. Provider has absolutely no right to receive any of these funds directly or indirectly from any insurer (health care or otherwise), or governmental agency(ies), including Medicaid or Medicare and must not negotiate any checks or drafts or receive cash from any other person, firm, or corporation without the expressed written consent of the Executive Director of the Corporation (except as set forth in the above described inpatient incentive based compensation plan, and in this event all funds must first be paid to the corporation).

Should provider violate the terms of this paragraph, it shall be considered a breach of this agreement.

*Emphasis provided.*

On August 25, 1995, Ms. Miller presented to St. Patrick's Hospital in distress. Dr. Toatley, as part of a cross call coverage arrangement with Dr. Biddle, was on call. The baby was born with several complications. Dr. Toatley directly billed for the baby. Bayou Comprehensive might never have even known of the delivery except Ms. Miller filed a complaint in state court against Dr. Toatley.

After Bayou Comprehensive became aware of the Miller's complaint against Dr. Toatley, it came to Bayou's attention that Dr. Toatley had been directly billing through his cross coverage agreement with Dr. Biddle for the Miller baby and other patients.[1] It is unclear exactly how many patients were billed directly by Dr. Toatley.

Audits were performed. Dr. Toatley contends that there was a "settlement" for all claims owing. The United States has stated that "[a]fter diligent attempts ... the Government found no documentary evidence to support that payments were made by Dr. Toatley." It is the understanding of this court that presently litigation between Dr. Toatley and Bayou is ongoing in regard to this question.

Dr. Toatley removed this case to federal court. He contends that the delivery of the Miller baby was in the scope of his employment with Bayou and therefore the United States should provide coverage under 42 U.S.C. § 233 et. seq. This is the sole basis for federal jurisdiction. If it was not within the course and scope of employment, then neither the United States nor Bayou may be held liable for any alleged malpractice. This case must then also be remanded back to state court.

---

1. Two things should be noted here. First, the arrangement between Dr. Toatley and Dr. Biddle appears to have been arranged through the physicians, not Bayou. Although Bayou certainly contemplated Dr. Toatley making arrangements for cross-coverage, the actual arrangements were left to the doctors.

Second, Dr. Toatley was directly billing by notifying medicaid and cross coverage patients to mail all payments to what appears to be *his* personal address. He had also hired Sigma to directly bill for him. Neither the address that he listed nor Sigma had anything to do with Bayou according to Milton Bellard, the executive director of Bayou.

## II. LEGAL STANDARD

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c) The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, and answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non movant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

The Supreme Court has noted that the summary judgment motion may be an appropriate avenue "to secure the just, speedy, and inexpensive determination" of a matter. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving parties'] position" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

## III. LEGAL ANALYSIS

Under 42 U.S.C. § 233(a), "a personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service *while acting within the scope of his office or employment*, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim." *Emphasis Added.* Of course, the requirement that an employee is acting within the scope of his office or employment corresponds to the purpose of the act.[2] While a person is acting within the scope of his office or employment, the United States will be the potentially liable so that community health care servers need not spend unnecessary funds on malpractice insurance for their doctors and themselves. However, the act is not meant to cover persons acting outside the scope of their employment for their own personal benefit.

To be acting within the course and scope of employment, Dr. Toatley must be holding true to his contract with Bayou. Dr. Toatley, of course, asserts that he was just providing cross coverage in his delivery of the Miller baby. The United States contends that since he was directly billing for the delivery of the Miller baby and for

---

2. Bayou receives federal funding under the Public Health Services Act for community health services, health services for the home-less, and/or health services for public housing residents.

other work he was performing, Dr. Toatley was not acting within the course and scope of employment with Bayou. This court is left to resolve that issue.

Two possibilities present themselves. Either Dr. Toatley was trying to circumvent Bayou by directly billing to "pocket" the 30% of the income which under the contract belongs to Bayou, or Dr. Toatley in providing cross-coverage honestly felt that he was authorized to directly bill without going through Bayou. Under either possibility Dr. Toatley's actions are by law not covered by the United States. Regardless of the intent, Dr. Toatley has no coverage and so trial on the merits is not warranted. This court will address each possibility separately.

### A. If Dr. Toatley Was Directly Billing to Circumvent Bayou, He Is Not Covered By The United States.

The whole purpose of the United States providing coverage for public health facilities is to prevent these facilities from spending money on malpractice insurance. Although Bayou attempts to provide quality care to lower income patients, Bayou is not in the business of losing money. In fact, incentives are built into the Contract to encourage doctors to make Bayou more profitable.

There is a possibility that Dr. Toatley got greedy. For the cross coverage work he provided that was billed through Bayou, he would receive only 70% of the amount. However, if Dr. Toatley directly billed, in essence cutting Bayou completely out of the equation, Dr. Toatley would recover the full 100% of the amount received.[3] Since the work was done outside of Bayou's clinic and because only the Doctors could provide the information about billing, it is easy to directly bill and circumvent Bayou.

If Dr. Toatley had the intent to circumvent Bayou, this court is not required to open the coffers of the United States to "reward" such conduct. To open the coffers would not only set a despicable precedent, but it would punish John and Jane Public for greed of a member of society who failed to follow the rules. This court will not condone such behavior.

Dr. Toatley's attempt at circumventing Bayou has had precisely that effect: Bayou is circumvented. Therefore, coverage for malpractice is likewise circumvented. The United States therefore does not cover Dr. Toatley's directly billed patients.

### B. Even If Dr. Toatley Was Not Trying To Circumvent Bayou His Actions Are Plainly Outside The Scope Of His Employment.

As in any summary judgment motion, the facts must be viewed in the light of the non-moving party. Both parties have moved for summary judgment. This court will now examine the facts assuming Dr. Toatley was not intentionally trying to circumvent Bayou.

It is true that under the Contract, Dr. Toatley was required to provide cross coverage. This cross coverage arrangement meant that Dr. Toatley was not on call 24 hours a day for 7 days a week. Rather he would take calls for Dr. Biddle, and likewise Dr. Biddle would take calls for Dr. Toatley. However, the Contract clearly demands that all money "generated, received, or collected as a result of or by inpatient care and outpatient care, shall belong to the Corporation. Provider has absolutely no right to receive any of these funds directly or indirectly ...." Thus, even assuming that Dr. Toatley was only involved in the agreement with Dr. Biddle for the benefit of cross coverage, it is clear

---

3. This court notes that just because something is billed does not mean that this amount is paid. However, whatever amount that is "collected" would go to the source that "billed" for the money.

that had Dr. Toatley been acting through or for Bayou, all billing and money should have been funneled through Bayou.

Since the money wasn't, it is clear that Dr. Toatley was operating and should have known that he was outside the scope of his employment with Bayou. True, he arranged for the cross coverage which is mandated by the Contract. However, he delivered the cross coverage through an outside agreement which compensation appears to be solely his alone (at least at the time of billing). This puts his actions outside the scope of his employment with Bayou.

Common sense dictates that if Bayou is not getting the benefit of billing for Dr. Toatley's efforts in delivering the Miller baby, Dr. Toatley is not covered by Bayou. Hence Dr. Toatley is not covered by the United States for these acts.

In this case, common sense need not even be utilized. The Contract states on page 6 that "The Provider is solely responsible for maintaining and acquiring malpractice or liability insurance to cover Provider for any employment activity not associated with Bayou Comprehensive Health Center. Note that any such employment activity must first be approved by the Executive Director in writing."[4] Obviously the fact that Bayou was neither billing nor receiving *any* compensation for the delivery of the Miller baby mandates that Dr. Toatley should have provided his own malpractice insurance.

The United States provides coverage to Bayou. Bayou in turn hires doctors to provide medical services for which Bayou then bills. The doctors and Bayou have a symbiotic relationship. Dr. Toatley gets a medical office, billing provided, and a large paycheck with incentives. Bayou gets to bill for his inpatient and outpatient services. Any reasonable person, especially a doctor, would understand this relationship. Once Bayou is denied the right to bill for the doctor's work with or without express written permission, Bayou is not benefitting. Thus, the doctor's actions are outside the scope of the contract. Thus, the United States will not and should not be held liable.

Dr. Toatley knew that Bayou was denied the opportunity to bill. Therefore, he should have known that his actions would not be covered by Bayou's coverage through the United States. Thus, he knew that his actions were not in the scope of his employment with Bayou.

To hold otherwise would expose the United States to liability for claims which it never intended to provide coverage. The United States clearly intended to provide coverage for those providers actively engaged in the scope of working for a public health facility. The United States in no way intended to impose liability on itself for private doctors providing private services for which they directly bill.[5]

## C. Assuming Dr. Toatley Later Did Pay Bayou Coverage By The United States Is Still Not Appropriate.

Dr. Toatley's brief appears to argue that eventually this matter was "settled" with

---

**4.** Dr. Toatley admits that he never received written permission to take the actions he did. Additionally, although Bayou agreed to the cross coverage, it does not appear that it ever agreed to not bill for Dr. Toatley's services.

**5.** In 1995 the Secretary of the U.S. Department of Health and Human Services issued a formal notice regarding 42 C.F.R. §§ 6.5–6.6 (1995) which clarified the agency's position on moonlighting: "We reiterate the statement in the preamble to the final rule that acts or omissions by individuals that are not within the scope of employment, e.g. moonlighting activities, are not covered." Notice Regarding the Federally Supported Health Centers Assistance Act of 1992, 60 Fed.Reg. 49,417, 49,418 (Sept. 25, 1995)(the "September 1995 Notice").

Bayou, and therefore, it should be covered regardless of the original intent of Dr. Toatley. This court disagrees. Even putting aside the fact that litigation is pending about whether or not that claim has or has not been paid, when the direct billing was done, it was not Bayou that was to benefit from that bill. Dr. Toatley's intent would control and his intent was not to pay Bayou Comprehensive.

Additionally, one cannot retroactively receive federal jurisdiction. If Dr. Toatley is covered by the Federal Torts Claim Act solely because later he "settled up" this would be the equivalent to retroactively obtaining federal jurisdiction. At the time of Dr. Toatley's action, no coverage existed, therefore at the time of the alleged injury federal jurisdiction did not exist. One cannot retroactively receive federal jurisdiction.

Furthermore, in *Metcalf v. West Suburban Hosp.*, 912 F.Supp. 382 (N.D.Ill.1996), the court held that coverage under the Federal Torts Claim Act did not apply retroactively to the alleged negligent care of a patient prior to effective date of eligibility for funding under Public Health Service Act. It would appear that the same is true here. At the time of the alleged negligent care with the Miller baby, Dr. Toatley was not covered; therefore, he should not be covered retroactively. *See also Matter of Zale Corp.*, 62 F.3d 746, 756 (5th Cir.1995), (in bankruptcy one must look past an agreement between parties to find a substantive basis for jurisdiction). This court either had jurisdiction, or it didn't. Jurisdiction cannot be created by subsequent actions of the parties. As the old adage says, it is too late to close the barn door after the horse has escaped.

### D. The Miller's Case

Dr. Toatley on several occasions has argued that to deny coverage to Dr. Toatley is unfair to the Millers. This court wishes to note that although denial of coverage by the United States *may* serve to limit the Miller's recovery, the alleged unfairness to one family is minuscule in comparison with the great injustice which would be inflicted on the American people. It is Dr. Toatley who practiced outside the scope of his employment with Bayou and without personal malpractice insurance. There may be a limitation of funds to the Millers if they prove their case against Dr. Toatley, but not one that the United States government should be forced to compensate.

For the reasons stated above, this court shall grant defendant United States' motion for summary judgment. This court shall also deny defendant Dr. Toatley's motion for summary judgment. Rather than remand this case to state court at this juncture, the court will render judgment under Rule 54(b) of the Federal Rules of Civil Procedure. The court specifically finds that there is no just reason for delay and will direct the entry of a final judgment as between Dr. Toatley and the United States. The court will order that all remaining claims be stayed pending appeal or lapse of the time for appeal. If this dismissal is affirmed or no appeal is timely taken, the case as to the remaining parties will be remanded to state court.

### JUDGMENT

For the reasons set forth in the memorandum ruling this date,

IT IS ORDERED, ADJUDGED, AND DECREED that the motion for summary judgment filed on behalf of the United States of America is GRANTED and that there be judgment in favor of the United States of America and against Donald U. Toatley dismissing Donald Toatley's claims against the United States of America with prejudice.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Donald Toatley's motion for summary judgment

against the United States of America is hereby DENIED.

IT IS FURTHER ORDERED that Donald Toatley pay all costs of court in the federal court proceedings.

The court finding that there is no just cause for delay under Rule 54(b) of the Federal Rules of Civil Procedure, IT IS ORDERED that this judgment be entered as a final judgment and that pending any appeal herein all further action except for a possible appeal be STAYED.

IT IS FURTHER ORDERED that if no appeal is taken or if this judgment is affirmed on appeal, this case shall be REMANDED to the Fourteenth Judicial District Court in and for Calcasieu Parish, Louisiana.