Bennett J. BAUR, as Personal Representative of the Estate of Laura McNaughton, Deceased; Maria Beardmore and David Beardmore; Madalin Corine McNaughton, a Minor, and Kelsey Paige McNaughton, a Minor, Plaintiffs,

v.

James SMITH, and The United States of America, d/b/a La Casa De Buena Salud, d/b/a La Casa Family Health Center Dental Clinic, Defendants,

and

Farm Bureau Financial Services, Plaintiff–In–Intervention,

v.

Bennett J. Baur, as Personal Representative of the Estate of Laura McNaughton, Deceased; Maria Beardmore and David Beardmore; Madalin Corine McNaughton, a Minor, and Kelsey Paige McNaughton, a Minor, Defendants–In–Intervention.

No. CIV 07–560 LFG/WDS.

United States District Court, D. New Mexico.

Nov. 19, 2007.

Corbin Hildebrandt, Corbin Hildebrandt, P.C., Albuquerque, NM, for Plaintiffs.

Jan Elizabeth Mitchell, United States Attorneys Office, Albuquerque, NM, for Defendants.

Elaine R. Dailey, Ronald J. Childress, Klecan & Childress, Albuquerque, NM, for Plaintiff–In–Intervention.

***MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND REMANDING ACTION TO STATE COURT***

LORENZO F. GARCIA, United States Chief Magistrate Judge.

THIS MATTER comes before the Court on the Motion [Doc. 4] of Defendant United States of America ("United States") to dismiss with prejudice Plaintiffs' Amended Complaint or, in the alternative, for summary judgment.

Plaintiffs in this action are the personal representative of the estate of Laura McNaughton, and the surviving parents and daughters of Ms. McNaughton. On May 23, 2006, Plaintiffs filed a Complaint

for Wrongful Death in the First Judicial District Court for the State of New Mexico, County of Santa Fe, naming as defendants James Smith ("Smith"), and La Casa de Buena Salud d/b/a La Casa Family Health Center ("La Casa") [Doc. 6, Ex. 1]. The case was removed to this Court after the United States was added as a defendant.

The United States argues that the complaint fails to allege a ground for federal jurisdiction and fails to state a cause of action against the United States upon which relief can be granted; that the suit is not properly brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*, because the action does not arise from the performance of medical, surgical, dental or related functions by La Casa while acting with the scope of its employment with the United States; and that even if the FTCA were applicable in this case, none of the plaintiffs, other than the personal representative of decedent's estate, exhausted administrative remedies prior to filing suit.

Plaintiffs filed a Response to the Motion, and United States filed a Reply. No other parties to this action responded to the Motion.[1] The Motion is now fully briefed and ready for ruling. No oral argument is necessary. The Court finds that the United States must be dismissed as a party in this action and the case remanded to state district court.

### Factual and Procedural History

On December 29, 2005, Dr. James Smith, DDS ("Smith"), was charged with

first degree murder (willful and deliberate), kidnaping (in the first degree), criminal sexual penetration in the first degree (force or coercion), and three counts of tampering with evidence, in connection with the death of Laura McNaughton [Doc. 4, Ex. C, Grand Jury Indictment].

Except where otherwise noted, the following factual recitation is taken from the record of the plea hearing in the case of *State v. James Smith*, Ninth Judicial District Court, Curry County, New Mexico, No. D–0905–CR–0200500967. At the plea hearing, the State set forth the factual basis it was prepared to prove at trial. Smith conceded that the facts were sufficient to convict him of the offenses charged; his counsel's only objection to the government's factual recitation was his belief that some of the information presented by the government was "extraneous" and not material to the charges.[2]

Smith was a dentist, employed by Defendant La Casa at the time of Laura McNaughton's death. The parties are in agreement that Ms. McNaughton visited La Casa as a dental patient on June 2, 2005 and was treated by Smith on that date; however, the parties dispute whether this was her only visit to the clinic. [Doc. 4, at 5; Doc. 11, at 6]. The first time Smith met Ms McNaughton may have been on the occasion when he treated her as a patient at La Casa, although it appears from his own statement that he first met her at the restaurant where she

---

1. However, as noted below, La Casa is litigating this issue in a separate proceeding.

2. The Court takes judicial notice of the record of the plea hearing in the above-cited case of *State v. James Smith*. A court may take judicial notice of the records of sister courts. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue"). The record of the hearing was supplied to this Court by the court monitor who was present at the plea hearing. The factual basis was presented at the following portion of the disk supplied by the state court: counters 00.08.45 to 00.18.15.

worked. *See,* Smith's answers to interrogatories [Doc. 11, Ex. D, at 2].

In early to mid-December 2005, pheasant hunters came across the nude body of woman in a rural area of Curry County. The hunters contacted the police, and the body was transported to a funeral parlor where it was identified as that of Laura McNaughton. An autopsy found that Ms. McNaughton sustained blunt force trauma to her head and had scratches and scrapes on her body, including the neck, lower back and chest. The cause of death was found to be strangulation, although the autopsy report indicated that the blunt force trauma would also have been sufficient to kill her.

During the course of the police investigation, Laura McNaughton's family members told police that she had been complaining about unwanted attention from a "Dr. Smith." Police officers thereafter contacted James Smith, who agreed to come into the police station for questioning. On the way to the police station, Smith stopped at a car wash to clean his truck. At this interview, Smith gave the police permission to search his truck. The search revealed hair matching the color of Laura McNaughton's, debris of the same sort found at the area where her body was located, and blood which was later found to be that of Laura McNaughton.

Under questioning, Smith at first denied knowing Laura McNaughton. He was released after agreeing to take a polygraph test. The day before the polygraph was scheduled, Smith stabbed himself, leaving a suicide note for his wife in which he denied any involvement with Laura McNaughton's death. After the self-inflicted stabbing, Smith was found and was taken to the hospital and treated for the wounds, from which he recovered.

The police conducted a search of Smith's home and his dental offices. They found a number of videos depicting the killing of women whose bodies were manipulated after death in a manner suggestive of necrophilia. They also found a poster which mimicked the wounds that Laura McNaughton received.

As noted above, police charged Smith in connection with Ms. McNaughton's death. On December 12, 2006, he entered an *Alford* plea[3] to charges of first degree murder (willful and deliberate), kidnaping (first degree), criminal sexual penetration in the first degree (attempted), and one count of tampering with evidence. [Doc. 4, Ex. D].

Although he initially denied knowing Laura McNaughton, and although he later pled no contest pursuant to *Alford* of kidnaping her, attempting to rape her, and murdering her, Smith now contends that he had a social relationship with Laura McNaughton and that although he caused her death by strangulation, it was an accident. He stated in his answers to interrogatories:

I had met Laura McNaugton as a waitress at the Rib Crib where I often went for lunch. We had become friendly and she had indicated that she would like to have a drink with me at some time. On the date of the incident I had been to the Rib Crib for lunch and had spoken with Laura McNaughton. That evening after I had had some six Tall Boy beers I decided to see if she might like to go out for a drink. I went to the Rib Crib but decided not to go in because of my intoxication. I followed her in my car to

---

**3.** *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), provides that "[a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

her home. Once she went into her house I went to the door and knocked and asked her if she wanted to go with me to have a drink. She agreed. We left in my truck and stopped at the side of the road and had some beers from an eighteen pack I had in my truck. I am not sure how much she had to drink. She indicated she needed to use the restroom and I told her that we were just a short distance from my home and we decided to go there. While we were watching television there may have been a show or something else that got us talking about erotic asphyxiation. We mutually decided to try that. There was no sexual contact but I proceeded to choke her with her consent. We had a safe word "civic." She died unexpectedly while I was choking her.

[Doc. 11, Ex. D, at 2].

At the December 16, 2006 plea hearing, state District Judge Joe Parker accepted the parties' plea agreement and, after the prosecution's presentation, found that there existed a basis in fact for believing that Smith committed the offenses charged and that an independent record for such factual basis had been made. The judge found further that the plea was voluntary, and that it was reasonable that the defendant enter the plea proposed. [*Id.*, at 5; *see also*, Transcript of Plea Hearing, at 00.18.15 to 00.19.20]. At sentencing later that day, Judge Parker sentenced Smith to life imprisonment on the murder charge; he sentenced Smith to 18 years, consecutive to the life sentence, for the kidnaping; he sentenced Smith to nine years, consecutive to the 18 years, for the attempted rape; and, the judge sentenced Smith to three years on the one remaining tampering with evidence charge, to run concurrent with the nine year sentence. He also ordered Smith to register as a sex offender in accord with New Mexico law. [Transcript of Plea Hearing, at 00.02.45 to 00.04.15, and 01.10.28 to 1.14.12].

As noted above, Plaintiffs initially filed a state court action against Smith for Laura McNaughton's wrongful death in May 2006. On April 17, 2007, Plaintiffs sought leave to file an Amended Complaint in that action, while the case was still in state court. In their motion to amend, they stated that they learned through discovery that La Casa "has an affiliation with the United States of America" under the Federally Supported Health Centers Assistance Act, and it would therefore be appropriate to add the United States as a party defendant. Counsel for defendants concurred in the motion. [Doc. 6, Ex. 17].

The motion to amend was granted, and on May 7, 2007, Plaintiffs filed an Amended Complaint in state court, naming as defendants both Smith and "the United States of America, d/b/a La Casa de Buena Salud d/b/a La Casa Family Health Center Dental Clinic." [Doc. 1, Ex. 1]. On the date the Amended Complaint was filed, summons was issued to the "United States of America, d/b/a/ First Choice Community Healthcare," in care of the United States Attorney for the District of New Mexico. [Doc. 6, Ex. 21].

In the Amended Complaint, Plaintiffs allege that Smith negligently or intentionally caused the death of Laura McNaughton. They further allege that La Casa was liable for Smith's actions under the doctrine of *respondeat superior*, as well for its own negligence in the hiring, training, supervision, discipline and retention of Smith as an employee, and "by allowing Defendant James Smith to have repeated personal contact with his patient, Laura McNaughton, outside of the professional setting, when he was under the influence of intoxicating beverages and did not have sufficient faculties and awareness to control himself in the presence of Laura McNaughton." [*Id.*, at 5–6]. Plaintiffs also assert claims against La Casa for

malicious, wilful, reckless and/or wanton acts. [*Id.*, at 6]. Plaintiffs allege further that, because La Casa receives federal funding, the United States is a proper Defendant in this case under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n), and should be held responsible for the actions of La Casa. [*Id.*, at 2–3, 4–6].

42 U.S.C. § 254b provides for grants to health centers serving "medically underserved populations." The FSHCAA provides that public or non-profit private entities receiving federal funds under 42 U.S.C. § 254b are "deemed" to be employees of the Public Health Service "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions," 42 U.S.C. §§ 233(a), (g). An entity so "deemed" is entitled to coverage under the FTCA. This means that the entity is immunized from liability, and the United States assumes the duty to defend an action alleging damages resulting from such medical functions and will compensate a prevailing plaintiff.

La Casa submitted an Answer to Plaintiff's Amended Complaint on May 19, 2007 asserting, *inter alia*, that it is immune from suit because it is covered by the FTCA. [Doc. 6, Ex. 22, at 5]. Defendant Smith also filed an Answer to the Amended Complaint, without making any assertions as to immunity under the FTCA. [Doc. 6, Ex. 24].

The FSHCAA provides that the United States shall make an appearance in a state court action such as that filed by Plaintiffs herein and advise the court whether the government takes the position that the clinic will be "deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1).

Section 233(*l*) further provides that, if the United States asserts to the state court that it deems the entity to be a covered employee, such an assertion will satisfy the provisions of § 233(c). That subsection provides that the case shall be removed to federal court, "[u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." *See also*, 28 U.S.C. § 2679(d)(2), the general removal provision for FTCA suits, which states that a case filed in state court will be removed to federal court "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose."

Under the FSHCAA, if the Attorney General fails to appear within 15 days and advise the state court of its position with respect to "deeming" the entity as an employee, the case may nevertheless be removed upon petition of the entity or employee seeking coverage under the FTCA. The federal court is thereafter to "mak[e] a determination as to the appropriate forum or procedure for the assertion of the claim for damages" and "issu[e] an order consistent with such determination." 42 U.S.C. § 233(*l*)(2).

In the present action, the United States denies that it is liable under the circumstances of this case and asserts that it is not a proper party to these proceedings, in state or federal court. However, the record of the state court proceedings [*see generally*, Doc. 6 herein] indicate that the United States did not appear in state court and advise as to whether Smith or La Casa were "deemed" employees under the FSHCAA, as contemplated by the Act. Instead, the United States removed the case to this Court and filed the Motion to Dismiss or for Summary Judgment.

The United States acknowledges that on May 5, 2005, the U.S. Department of Health and Human Services, Bureau of Primary Health Care, sent to La Casa a letter labeled "Malpractice Liability coverage-Renewal health center deeming letter," stating that the Bureau, pursuant to 42 U.S.C. § 233(g) of FSHCAA, "redeems the above named entity [*i.e.*, La Casa] to be an employee of the PHS for purposes of the Federal Tort Claims Act (FTCA) medical malpractice liability coverage, effective January 1, 2005." [Doc. 4, Ex. A, at 1]. The letter stated that FTCA coverage was intended to extend to the health center itself as well as to its officers, governing board members, employees, and licensed or certified health care practitioner contractors. [*Id.*].

In June 2006, approximately one month after this case was first filed in New Mexico state court, La Casa contacted the Department of Health and Human Services seeking immunity from this lawsuit under the FTCA and the FSHCAA [Doc. 4, at 6, and Ex. E thereto; Doc. 11, at 7]. Deputy Associate General Counsel Lisa Barsoomian with the Department of Health and Human Services wrote back to La Casa's Executive Director on October 6, 2007, advising him that neither La Casa nor Smith would be deemed employees of PHS for purposes of this lawsuit. [Doc. 4, Ex. F]. Ms. Barsoomian referred in her letter to the Bureau of Primary Health Care's Public Information Notice 99–08, which notifies covered entities that:

> The FTCA provides protection only for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions (i.e., malpractice). Consequently, even with FTCA coverage, Health Centers will continue to need other types of insur-

ance (e.g., directors and officers liability, general liability, auto insurance). [*Id.*, at 2]. The letter further explained that the Secretary of Health and Human Services would not deem La Casa or Smith to be employees of PHS for purposes of this lawsuit, because the acts or omissions giving rise to the suit did not "sound in medical malpractice" in that Ms. McNaughton's death did not result from the "performance of medical, surgical, dental, or related functions" as required by 42 U.S.C. § 233(a). [*Id.*].

On October 30, 2006 and again on December 21, 2006, the United States Attorney for the District of New Mexico wrote to counsel for La Casa, stating his concurrence with the agency's determination that La Casa and Smith are not properly deemed employees of PHS in that Ms. McNaughton's death did not result from the performance of medical, surgical, dental, or related functions, and because the conduct leading to her death was done by Smith outside the scope of his employment with La Casa. [Doc. 4, at 6, and Exs. G, H thereto; Doc. 11, at 7].

As noted above, the FSHCAA contemplates that the entity or individual potentially covered under the FTCA—in this case, La Casa or Smith—would be the parties to petition for removal to federal court, if the United States fails to certify within fifteen days that the entity is deemed an employee of PHS. In the present case, however, the United States did not make the certification, and neither La Casa nor Smith petitioned for removal. Rather, the United States filed a Notice of Removal [Doc. 1] on June 11, 2007. In the meantime, La Casa had already filed a separate lawsuit in federal court, Civ. 07–238 JB/RHS, seeking a declaratory judgment that it should be deemed an employee of PHS for purposes of this lawsuit.[4]

---

**4.** As it did in this case, the United States filed a Motion to Dismiss or in the Alternative for

Summary Judgment in the declaratory judg-

In its Notice of Removal in this proceeding, United States asserted that, because Plaintiffs seek money damages for death allegedly caused by a wrongful act or omission of an employee of the United States, this action "appears to be controlled by" the FTCA, and thus is an action over which the federal court has exclusive jurisdiction. [Doc. 1, at 2].

However, in its Answer to Plaintiffs' Amended Complaint, filed eight days later, the United States asserted as an affirmative defense that this Court lacks jurisdiction over the United States under the FTCA, because the case does not involve an act or omission by any employee of the United States. The United States argues that La Casa cannot be deemed a federal employee for purposes of this action, because "the scope of deemed federal employment under the ... [FSHCAA] is limited to cases seeking damages resulting from the performance of medical, surgical, dental, or related functions." [Doc. 7, at 6].

Further, in its Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 4], the United States argues that subject matter jurisdiction is lacking in this Court. It contends that, as Plaintiffs' claims do not arise from the performance of medical, dental, surgical, or related functions, therefore La Casa was not acting within the scope of its employment under the FTCA with respect to the allegations contained in Plaintiffs' suit, and the United States is thus not a proper party in this case. [Doc. 4, at 2].

### Discussion

The United States is in the anomalous position of having removed this case to federal court, then arguing there is no federal jurisdiction. On the other hand, La Casa and Smith, who stand to benefit from FTCA coverage, did not petition for removal as contemplated by the FSHCAA, nor did they file any Response, in the present lawsuit, to the United States's Motion to Dismiss.

Although the statutory procedures were not strictly followed in this case, the Court concludes that it would be an empty exercise to remand the case to state court on that ground. Any such remand would likely result in La Casa and/or Smith filing the necessary petition, and the Court would then proceed to make the same determination regarding the appropriate forum for the assertion of the claims (see, 42 U.S.C. § 233($l$)(2)) as it would make if it simply decided the United States's motion at this point. One clear purpose of the procedural steps set forth in the statute is to allow questions of federal jurisdiction to be determined by federal courts. When a party seeks to bring the United States into an action as a defendant, it is appropriate that the jurisdictional issue be decided in a federal forum. See, 28 U.S.C. § 1346, giving exclusive jurisdiction to United States District Courts over actions in which the United States is a defendant.

### Standards for Treating the Motion as one for Summary Judgment While Dismissing for Lack of Subject Matter Jurisdiction

As neither La Casa nor Smith filed the petition for removal in this case, and neither of them filed a Response to the United States's Motion to Dismiss, it appears that these defendants do not wish to litigate the issue in this action.[5] However, in this case, Plaintiffs filed a Response to the United States's Motion to Dismiss, and both the Plaintiffs and the United States

---

ment action. That Motion is currently pending. No party has requested that the two cases be consolidated.

5. As noted above, La Casa is presenting its arguments on this issue in case No. Civ. 07–238.

clearly wish to have the matter decided by this Court. The Court has a duty to determine its own jurisdiction, and resolution of the jurisdictional issue in this case turns on the question whether the United States is a proper defendant in this action.

In the course of deciding the jurisdictional issue, the Court will therefore decide the Motion to Dismiss or, in the Alternative for Summary Judgment presented by the United States, even though the Court ultimately determines that federal jurisdiction is lacking. This is the only way the Court can fulfill its duty to "make the determination as to the appropriate forum," as directed in the FSHCAA. The fact that it was the United States, and not La Casa or Smith, who sought removal for purposes of deciding this issue is not dispositive.

▇▇▇ The United States asks the Court to either dismiss the case under Rule 12(b)(1), "lack of jurisdiction over the subject matter"; Rule 12(b)(6), "failure to state a claim upon which relief can be granted"; or Rule 56, summary judgment. Both parties submitted material outside the pleadings, and the Court finds these materials helpful in deciding the issue of subject matter jurisdiction and will refer to them in this opinion. In general, a Court may consider such material in deciding its subject matter jurisdiction without converting the motion into one for summary judgment. *Sizova v. Nat'l Inst. of Standards and Tech.*, 282 F.3d 1320, 1324 (10th Cir.2002). However, where the issue of subject matter jurisdiction is "intertwined" with the merits in such a way that "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim," then the Court must proceed under Rule 12(b)(6) or Rule 56. *Id.*; *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).

▇▇▇ In this case, the Court finds that the jurisdictional question is intertwined with the merits of the case, because subject matter jurisdiction is dependent on the same statute, the FTCA, which provides the substantive claim in the case. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987); *Olsen v. United States ex rel. Dep't of the Army*, 144 Fed.Appx. 727, 730, 731 (10th Cir.2005):

> In this case, the jurisdictional question is dependent on the same statutes which provide Ms. Olsen's substantive claims [citing the Federal Tort Claims Act]. . . . We also note that the district court referred to matters that are outside of the parties' pleadings in its order granting the United States' dispositive motion. . . . Accordingly, we conclude that the district court should have treated the United States' motion as a motion for summary judgment under Rule 56 . . . [but] when the district court entered judgment in favor of the United States, the court should have specified that it was dismissing this action for lack of subject matter jurisdiction.

Thus, the Court will proceed in this case under Rule 56 and will dismiss the action for lack of subject matter jurisdiction.

Furthermore, treating this motion as one under Rule 56 does not take Plaintiffs by surprise, because the United States labeled its Motion as one seeking summary judgment as an alternative resolution. When the United States submitted material outside the pleadings in support of its Motion, Plaintiffs did not attempt to exclude the United States's material but rather responded with evidentiary material of their own. *Nichols v. United States*, 796 F.2d 361 (10th Cir.1986); *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) ("Because the non-movant submitted material beyond the pleadings in opposition to the defendants' motion, he is scarcely in a position to claim unfair sur-

prise or inequity [internal punctuation omitted]").

Plaintiffs argue in their Response that it is too early in the discovery process to decide this case on summary judgment. [Doc. 11, at 13–14]. Plaintiffs' attorney submitted an affidavit pursuant to Rule 56(f) [Doc. 11, Ex. B], in which he states that further factual development is needed with respect to, *inter alia*, the law enforcement file and investigative materials in connection with the criminal case brought against Smith resulting from the death of Laura McNaughton. The affidavit failed to specifically demonstrate how additional evidence would assist Plaintiffs in overcoming the United States's showing of an entitlement to judgment. *Ben Ezra, Weinstein & Co. v. America Online, Inc.,* 206 F.3d 980, 987 (10th Cir.2000). The Court denies the request for further factual development, finding, as discussed below, that any such evidence is immaterial to the narrow issue decided in this ruling: whether Smith's and La Casa's actions constituted the "performance of medical, surgical, dental, [or] related functions." *Cf. DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1393 (10th Cir. 1990):

> We rest our holding that the district court properly dismissed DeVargas's section 504 claim on the applicable law and the intent of Congress. We therefore conclude that further factual development was unnecessary and that the district court did not abuse its discretion in rejecting DeVargas's request for further discovery under Federal Rule of Civil Procedure 56(f).

After carefully considering the Motion in this case and the Response thereto, the Court finds, as a matter of federal statutory law, that the United States is not a proper defendant in this action and that it must be dismissed as a party defendant. This Court therefore does not have subject matter jurisdiction over Plaintiff's claims, and the case will be remanded to state court.

### Standards for Removal of Actions

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c)

Federal court jurisdiction is to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). There is a "strong presumption" against removal jurisdiction, and if there is any doubt as to the right of removal, federal jurisdiction must be rejected. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995).

Normally, the party seeking removal has the burden of establishing federal jurisdiction. *Laughlin v. Kmart Corp., supra,* at 873. As noted above, in this case the United States is the party filing the Notice of Removal. However, the United States argues that federal jurisdiction is lacking whereas Plaintiffs, who originally filed this case in state court, argue that this Court does have jurisdiction and that the United States is a proper party herein.

### Jurisdiction Under the Federal Tort Claims Act

The FTCA provides that the United States district courts:

shall have original jurisdiction of civil actions on claims against the United States, for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The United States, as a sovereign, long enjoyed an all-encompassing immunity from tort liability. *Rayonier, Inc. v. United States,* 352 U.S. 315, 319–20, 77 S.Ct. 374, 377, 1 L.Ed.2d 354 (1957). As a sovereign, it was immune from suit unless it consented to be sued. *Id.*

■ The harshness of the absolute immunity rule resulted in injustice, as victims of the government's negligence had no forum within which to redress grievances, save for the practice of seeking recompense in Congress by means of private relief bills. These bills sought to resolve claims for specific constituents. The process was time consuming and cumbersome. It resulted in Congress being inundated every legislative session with countless requests to resolve specific disputes involving individuals. *See* 1 Lester S. Jayson & Robert C. Longstreth, *Handling Federal Tort Claims* § 3.01[2] (2007). Congress' attention was diverted from national issues while it sought to deal with a plethora of private claims. Moreover, Congress was not well equipped to resolve factual disputes relating to liability claims and resulting damages. S.Rep. No. 79–1400, at 7 (1946). The concerns of injustice and burdens on Congress ultimately culminated in the promulgation of the Federal Tort Claims Act. The purpose of the Act was not only to relieve Congress of the burden of private bills, but also to "compensate

the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws." *Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

■ However, any waiver of sovereign immunity is to be strictly construed. *U.S. Dep't of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). Since the Federal Tort Claims Act served to abrogate the traditional immunity enjoyed by the sovereign, Congress conditioned access to the courts on very specific terms and conditions and required strict compliance with the statute. *Three-M Enters., Inc., v. United States,* 548 F.2d 293, 294–95 (10th Cir.1977); *Anderberg v. United States,* 718 F.2d 976, 977 (10th Cir.1983); *Hart v. Dep't of Labor ex rel. United States,* 116 F.3d 1338, 1339 (10th Cir.1997).

With respect to tort actions against officers or employees of the United States Public Health Service, federal statutes provide as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 ... for damage for personal injury, including death, resulting from the performance of medical surgical, dental, or related functions ... by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

■ As noted above, the FSHCAA provides that, for purposes of Section 233, a public or non-profit private entity receiv-

ing funds to provide medical services in underserved areas "and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician, or other licensed or certified health care practitioner ... shall be deemed to be an employee of the Public Health Service." 42 U.S.C. § 233(g). The result of such "deeming" is that:

> The remedy against the United States for an entity described in paragraph (4) and any officer, governing board member, employee or contractor ... of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceedings to the same extent as the remedy against the United States is exclusive pursuant to [Section 233(a)].

42 U.S.C. § 233(g). Thus, an entity or employee so "deemed" will be immunized under the FTCA, and the United States will be substituted as defendant in claims against the entity or employee.

Regulations promulgated pursuant to Section 233 provide that, with respect to individuals, only acts and omissions within the scope of their employment (or contract for services) are covered, and that if the individual "is providing services which are not on behalf of the covered entity, ... acts and omissions which are related to such services are not covered." 42 C.F.R. § 6.6(c). Furthermore, "[o]nly acts and omissions related to the grant-supported activity of entities are covered." 42 C.F.R. § 6.6(d).

As discussed above, the United States advised La Casa in October 2006 that it did not deem La Casa or Smith to be employees of PHS, for purposes of this lawsuit. [Doc. 4, at 6, and Exs. E, F thereto; Doc. 11, at 7].

Thus, Plaintiff's allegations against La Casa and Smith come within federal juris-diction only if Smith's private conduct with Ms. McNaughton was done "on behalf of" La Casa, 42 C.F.R. § 6.6(c), and if La Casa's actions in hiring and retaining Smith as a medical services provider constitute "the performance of medical, surgical, dental, or related functions" and "acts or omissions related to the grant-supported activity" of La Casa. 42 U.S.C. § 233(a); 42 C.F.R. § 6.6(d).

The Court finds, as a matter of law, that the injuries for which Plaintiffs seek compensation did not result from actions done "on behalf of" La Casa by one of its employees, nor did they "resul[t] from the performance of medical, surgical, dental or related functions," nor from any "acts or omissions related to the grant-supported activity" of La Casa.

*Smith is Not "Deemed" an Employee of PHS With Respect to His Actions Leading to the Death of Laura McNaughton*

Plaintiffs contend that factual issues exist as to whether Laura McNaughton's death was an accident or murder, and that further factual development is needed to flesh out this issue. They argue that "the proximate cause or nexus between the doctor-patient relationship and the patient's eventual demise at the hands of the doctor" is an issue for the factfinder and not something the Court should determine at this stage of the proceedings.

While Smith stated in his answers to interrogatories that Laura McNaughton's death was an accident and occurred during a mutually agreed-upon experiment with "erotic asphyxiation" [Doc. 11, Ex. D], he nevertheless entered an *Alford* plea to charges of kidnaping, first degree murder, murder, attempted criminal sexual penetration, and tampering with evidence by disposal of Ms. McNaughton's body.

Plaintiffs argue that because Smith entered an *Alford* plea rather than pleading guilty, he did not admit that he committed these offenses. While it may be true that Smith did not admit committing the offenses charged, the judge in the criminal action found that there was a factual basis for believing that Smith did in fact commit the acts that formed the basis for the charges, and Smith acknowledged that the State had sufficient evidence to prove that he had done the acts. The *Alford* plea means that Smith has been convicted of murder and other crimes in connection with McNaughton's death.

> An *Alford* plea is one in which a defendant may maintain his innocence while agreeing to forego his right to a trial.... However, for such a plea to be valid, it must be based on the defendant's intelligent conclusion that "the record before the judge contains strong evidence of actual guilt" ... As *Alford* and the cases which followed in its wake made clear, however, there must always exist some factual basis for a conclusion of guilt before a court can accept an *Alford* plea; indeed, a factual basis for such a conclusion is "an essential part" of an *Alford* plea.... [T]he collateral consequences flowing from an *Alford* plea are the same as those flowing from an ordinary plea of guilt.

*Wirsching v. Colorado,* 360 F.3d 1191, 1204 (10th Cir.2004) (some internal punctuation omitted). "[A]n *Alford* plea is a guilty plea and properly considered as a prior criminal conviction for purposes of the Sentencing Guidelines." *United States v. Delgado–Lucio,* 184 Fed.Appx. 737, 740 (10th Cir.2006).

It is therefore accurate to say that Smith stands convicted of kidnaping, raping and murdering Laura McNaughton, and then tampering with evidence by disposing of her body in an effort to hide the evidence of these crimes.

The question whether Ms. McNaughton's death was an accident which occurred during consensual sexual activity, or whether Smith intentionally killed her, is not material to the question of federal jurisdiction in this case. The Court therefore rejects Plaintiffs' contention that further factual development is necessary on this question. Even if Smith had been engaging in dangerous sex acts with Ms. McNaughton at the time of her death, rather than intentionally choking or bludgeoning her, his actions cannot conceivably be said to fall within the realm of "performance of medical, surgical, dental, or related functions," and no factfinder could reasonably find otherwise. The fact that Laura McNaughton was a patient at La Casa, and received dental services from Smith on one or more occasions, is likewise immaterial to the issue of whether Smith's acts constituted the performance of dental or related functions. Even if Smith's status as a dental care provider at La Casa supplied the occasion for Smith and Ms. McNaughton to meet, this would not convert his actions in engaging in erotic asphyxiation with her or, alternatively, in intentionally choking her to death, into the "performance of dental functions." No reasonable factfinder could conclude otherwise.

FSHCAA regulations provide that an individual deemed to be an employee of PHS is covered by the FTCA "only [for] acts and omissions within the scope of their employment (or contract for services)" and not for "providing services which are not on behalf of the covered entity." 42 C.F.R. § 6.6(c). No reasonable factfinder could conclude that the actions of Smith with regard to McNaughton, whether they were consensual sexual acts or deliberate homicide, were done "on behalf of" La Casa.

The following cases support the conclusion that actions which do not fall within the realm of provision of medical services do not provide immunity under FSHCAA. In *Mendez v. Belton*, 739 F.2d 15 (1st Cir.1984), the circuit court held:

> The statute protects Public Health Service officers or employees from suits that sound in medical malpractice. Dr. Mendez's action against Dr. Belton for alleged acts of intentional discrimination on the basis of race and sex occurring in the course of the professional prior review process is not the sort of malpractice claim that 42 U.S.C. § 233(a), and similar statutes protecting doctors ..., meant to protect against. *See* 1976 U.S.Code Cong. & Admin. News 4443, 4445, 4451 (these statutes provide absolute immunity against "what is commonly termed 'malpractice'").... Cases in which defendants have successfully invoked these immunity statutes typically involve claims by patients against doctors for damages caused by improper medical treatment.

Smith's actions toward McNaughton on the night of her death, in whatever version a factfinder might choose to believe, did not constitute "improper medical [or dental] treatment."

Other cases have emphasized the context of the FSHCAA as a statute intended to relieve community health centers from the burden of carrying medical malpractice insurance. "Essentially, the United States through the Federal Tort Claims Act exposes itself to lawsuits, in place of a health center. Therefore, the health center need not purchase and maintain malpractice insurance for itself or its physicians." *Miller v. Toatley*, 137 F.Supp.2d 724, 725 (W.D.La.2000), *aff'd*, 251 F.3d 157 (5th Cir. 2001). The court *Miller* court continued:

> While a person is acting within the scope of his office or employment, the United States will be the potentially liable [party] so that community health care servers need not spend unnecessary funds on malpractice insurance for their doctors and themselves. However, the act is not meant to cover persons acting outside the scope of their employment for their own personal benefit.

*Id.* at 727. Whether Smith's acts personally benefited him is unclear; what is certain is that his acts were not done on behalf of, or for the benefit of, La Casa.

In *Teresa T. v. Ragaglia*, 154 F.Supp.2d 290 (D.Conn.2001), the court held that a doctor's failure to report suspected child abuse, after he examined the child at the request of state authorities, was within the coverage of the FTCA because the doctor was employed by a center receiving federal funds, and his actions fell within the realm of provision of medical services. The court reasoned that the physician's statutory duty to report child abuse "is required of doctors when they act as doctors, not when they are acting as private persons," and the failure to report child abuse was therefore a "related function" which meant the doctor was covered by the FTCA through FSHCAA. *Id.* at 299–300.

This Court notes that the *Teresa T.* court also held that "the immunity provided to employees of the Public Health Service is not limited to claims for medical malpractice." *Id.* at 299. While this Court does not necessarily agree with that statement, *Teresa T.* supports the conclusion that, to be covered under the FTCA, the doctor must be acting in his professional capacity. Smith was not acting in his professional capacity when he engaged in the actions leading to McNaughton's death. The Court concludes, as a matter of law, that Smith's actions toward Laura McNaughton on the night of her death did not constitute "performance of medical, surgical, dental, or related functions," nor

were they done "on behalf of" La Casa. Therefore, Smith cannot be deemed to be a PHS employee for purposes of FTCA coverage with respect to those actions.

*The United States is Not Liable to Ms. McNaughton's Estate nor to Her Survivors for La Casa's Actions in Hiring, Training, Retaining and Supervising Smith*

As discussed above, a community health center such as La Casa which provides health services to underserved populations is eligible to receive federal funding under 42 U.S.C. § 254b. Under the FSHCAA, the entity itself, along with its employees, may be "deemed" an employee of PHS, and the United States will thereupon be liable under the FTCA for injury or death resulting from the performance by the entity of medical, surgical, dental, or related functions. It is undisputed that La Casa was so "deemed" for the period during which Laura McNaughton died at the hands of Smith.

 Plaintiffs argue that La Casa was negligent in hiring and retaining Smith, and that La Casa's employment activities in this regard constitute functions "related" to the provision of medical and dental care and are therefore covered by the FTCA pursuant to the "deeming" provision of the FSHCAA. The United States contends that the purpose of the FSHCAA is to relieve community health centers from the necessity of obtaining and paying for medical malpractice insurance, and that La Casa's employment activities are or should be covered by other sorts of insurance. Plaintiffs counter that an entity's negligence in hiring or retaining medical professionals falls within the category of medical malpractice.

The Court agrees with Plaintiffs that a hospital or clinic's negligence in hiring or retaining medical professionals may come under the broad umbrella of the term "medical malpractice." However, the United States is correct in pointing out that the New Mexico cases cited by Plaintiffs all involved liability of an entity for acts of its employee falling within the category of medical negligence, and they support the proposition that an entity hiring a medical professional has a duty to protect its patients by inquiring into the employee's competence in the realm of provision of medical services.

However, the Court cannot agree that the monitoring of an employee's private sexual behavior is part of a medical clinic's duty as an employer or prospective employer under the FSHCAA. The Court therefore holds that, under the circumstances of this case, La Casa's actions in hiring and retaining Smith were not functions "related" to the provision of medical or dental services.

The FSHCAA provides that an entity such as La Casa, in order to be designated as a PHS employee for purposes of FTCA coverage, must demonstrate that it:

(1) has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity;

(2) has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary, has obtained the permission from these individuals to gain access to this information.

42 U.S.C. § 233(h).

Plaintiffs allege in their complaint that La Casa should be held liable for its actions in "allowing Defendant James Smith to have repeated personal contact with his patient, Laura McNaughton, outside of the professional setting, when he was under the influence of intoxicating beverages and

did not have sufficient faculties and awareness to control himself in the presence of Laura McNaughton." [Amended Complaint, Doc. 1, Ex. 1, at 5–6]. Section 233(h) speaks of requirements in the employment context concerned with ensuring that a covered entity's medical providers are licensed and are professionally qualified and competent to deliver medical services. The employer is not required by the statute to inquire into the sexual proclivities of its employees, to prevent its employees from drinking intoxicating beverages on their personal time, or to keep its employees away from social relationships with clinic clients.

If an employee is retained to provide dental services rather than, for example, to drive a government vehicle in the course of the employment, his or her driving record is not a relevant subject of the employer's inquiry. As the United States points out in its briefing, the United States could not be held liable under the FTCA if McNaughton died while a passenger in Smith's car, even if he were driving erratically and were later charged with and convicted of vehicular homicide. Similarly, an employer would have no reason to inform itself, or to keep itself informed, about an employee's sex practices, because sexual activity is not part of the provision of professional dental services.

Plaintiffs argue that the fact that Smith came into contact with McNaughton because she was a patient at the clinic, and that he provided dental services to her there on at least one occasion, compels the conclusion (or at least requires further factual development) that La Casa should be held responsible for the later sexual activity between the two, which occurred off the premises of La Casa, at a time when Smith was not on duty as a dentist.

Smith indicates in his answers to interrogatories that he actually met Ms. McNaughton at a restaurant where she was working and he was a customer, and that they became friendly after that. [Doc. 11, Ex. D]. The Court does not find it necessary to resolve this factual issue, because the location where the two first met is not material to resolution of this Motion. Even if Smith first met Ms. McNaughton when she came to La Casa as a patient, that does not make the United States liable under the FTCA.

Extending liability under the FTCA in this situation would mean that the United States would be responsible for every customer who comes into contact with an employee of a federally-funded health clinic at the place of business, if the employee later causes harm to the customer in any context, however far removed from the physical workplace or from the purpose of the clinic's business.

Plaintiffs also allege that Smith wore his dentist's smock at times when he met McNaughton outside of business hours and away from the clinic premises, and they appear to allege that this fact, if established, would bring Smith's sexual activities into the realm of La Casa's responsibility and, therefore, the responsibility of the United States as well. This argument borders on the frivolous. Even if true, Smith's choice of attire for after-hours conduct does not convert the conduct into the performance of medical, dental, surgical or related functions. As earlier indicated, if Smith were wearing his dental smock while driving his personal vehicle on a non-business related trip, his use of the smock would not convert an automobile accident into medical, dental, surgical or related functions.

The Court has already held that Smith's actions which led to the death of Laura McNaughton—including the offenses for which he was convicted, i.e., kidnaping, attempted rape, murder, and disposal of her body—did not "resul[t] from the per-

formance of medical, surgical, dental, or related functions." The Court further holds that La Casa's duties under federal statutory law, with respect to the hiring and retention of Smith, did not extend to inquiring into or monitoring his private social life and sexual practices. Furthermore, both Smith's and La Casa's actions fall outside the category of "acts and omissions related to the grant-supported activity of entities."

It may be that the United States, by deeming La Casa an employee of PHS for purposes of the statute, agreed to shoulder liability and the duty to defend if La Casa were negligent in failing to inquire into Smith's medical or dental qualifications, and if McNaughton thereafter died in the dental chair because Smith failed to apply the standard of care applicable to reasonably well-qualified dentists. But that is not what happened in this case. Any failure on the part of La Casa to inquire into or to monitor Smith's off-hours, off-duty and off-premises sexual activity is not covered by the FSHCAA, because it is not "related to the performance of" medical, surgical, or dental functions and was not "related to grant-supported functions" of La Casa. The United States is, thus, not responsible under the FTCA for La Casa's actions in hiring or retaining Smith.

This is a narrow ruling. The Court holds only that Plaintiffs failed to meet their burden of establishing a waiver of the sovereign immunity of the United States. *See, James v. United States,* 970 F.2d 750, 753 (10th Cir.1992). The Court finds that the statutory phrase "related functions," and the regulatory phrase "related to the grant-supported activity of entities," do not include the hiring and retention of medical professionals, in situations where the injury for which the plaintiff seeks compensation arose from actions of entity employees falling outside the provision of medical, dental or surgical services.

The Court specifically makes no comment on potential liability of Smith or La Casa outside of the federal statutory scheme. While the Court is aware that the substantive cause of action under the FTCA is to be determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), it is also true that liability may exist in state court even though precluded under the FTCA. State wrongful death statutes, "when relied on in connection with a claim under the Tort Claims Act, must be applied in accordance with the spirit and purpose and provisions of ... [the FTCA], whether the result be to enlarge the rights they confer [under state law] or to limit them." 2 Jayson & Longstreth, *supra,* at § 9.04[1] (2007), *citing, Van Sickel v. United States,* 285 F.2d 87 (9th Cir.1960) (wrongful death complaint dismissed under the *Feres* doctrine, even though state law would have allowed survivors of decedent to bring the action in state court).

The above resolution makes it unnecessary for the Court to determine other issues raised by the United States in its Motion, including whether Plaintiffs improperly named the United States as a "d/b/a," whether certain plaintiffs exhausted their administrative remedies under the FTCA, and whether certain claimed elements of damage are allowed under the FTCA.

### Order

IT IS THEREFORE ORDERED that the United States's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. 4] is granted, and the United States is hereby dismissed as a defendant in this action;

IT IS FURTHER ORDERED that this action is remanded to the district court of

the State of New Mexico as this Court lacks subject matter jurisdiction.